**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____

TAMIKA BROCK
    **Plaintiff**,

                                                **COMPLAINT**
VS.                                                  December 18, 2020

STATE OF CONNECTICUT,
DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES
(DMHAS)
    **Defendant**.

_____

By and through her counsel, Cynthia R. Jennings, Plaintiff Tamika Brock hereby alleges against the Defendant named herein:

A.     **PARTIES**

1.     Plaintiff Tamika Brock is a United States citizen who resides and works in the State of Connecticut.

2.     Defendant State of Connecticut, Department of Mental Health and Addiction Services is an Agency of the State of Connecticut.

B.     **JURISDICTION**

1.     Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of

1964 when Defendant discriminated against her on the basis of her race, color, mental disabiity;

and, retaliated against her for her opposition to illegal discrimination.  Therefore,  this Honorable

Court has jurisdiction over this matter pursuant to 28 U.S.C. secs. 1331 and 1343 as well as 42

U.S.C. section 2000(e)-2 and 42 U.S.C. Sec. 2000e-3(a).

2.     Plaintiff filed a timely charge of  employment discrimination with the EEOC and

initiates this action within 90 days of her receipt of the right to sue letter dated October 7, 2020. See, Exhibits 1 & 2.

C.   **BACKGROUND**

1. Plaintiff, Tamika Brock, is an African American /Black female. Plaintiff is a Licensed Clinical Social Worker employed by the Defendant.

2. The Defendant is the State of Connecticut, Department of Mental Health and Addiction Services. The Defendant is employed by the State of Connecticut Department of Mental Health and Addiction Services (DMHAS).

3. The Defendant employs more than 20 people.

4. In September of 2018, Plaintiff was hired by Defendant to work as a clinical social worker/therapist at the DMHAS office in Norwich, Connecticut located at 401 West Thames Street.

5. Plaintiff's immediate supervisor was Lori Orend.

6. From the outset, Plaintiff was confronted by a range of conflicting instructions and procedural tasks at her job.

7. Defendant did not endeavor to train Plaintiff on intakes, discharges, treatment plans expectations, and other protocols and procedures related to Plaintiff's job. On one occasion Plaintiff even was given a project that the secretaries usually complete. On

another occasion, a client was asked if he would object to a Black female therapist. Said client told Plaintiff that he was upset that he was even asked such a question.

8. Defendant failed and refused to clarify the work expectations and protocols for Plaintiff. When Plaintiff asked for more specific and consistent instructions Plaintiff was told by her superior that Plaintiff was being argumentative. Plaintiff's work environment was hostile from the outset and continued with increasing intensity.

9. At or around the fall of 2018 Plaintiff met with Lori Orend and Mary Beth Jordan, Director. At that meeting, Plaintiff expressed her concerns about the training and supervision Plaintiff was receiving, Lori Orend stormed out of the meeting and slammed the door saying "I'm not supervising her."

10. Mary Beth Jordan dismissed the outburst, indicating to Plaintiff that Orend, Plaintiff's supervisor, was simply frustrated and left the meeting. Plaintiff's concerns about training and supervision remained unaddressed.

11. Defendant's ongoing discrepancies, lack of clear policies and guidelines, and issuance of incorrect information to the Plaintiff continued. Defendant continued to fail to provide to the Plaintiff, proper training, guidance and feedback as would be required by any new employee.

12. There was an occasion when Plaintiff asked for clarification about which documents were required for a release of information, and her supervisor, Lori Orend turned to

Plaintiff and said "Tamika, I have to wonder about your competency as a social worker if you do not know how to complete a Release of Information." Plaintiff was hurt and bewildered by Orend's response. Defendant publicly questioned Plaintiff's clinical competency for what was merely a clerical procedural question on completion of Defendant's procedures. Plaintiff had not yet been trained by the Defendant in the policies and procedures of that department.

13. The workplace became more and more hostile. Other staff would treat Plaintiff with disdain, echoing Lori's critical and negative attitude towards Plaintiff. There seemed to be special rules for Plaintiff: Plaintiff was not to stamp on the chart; Plaintiff was not to use aroma therapy or scents in the office; Plaintiff was told to leave her door open while other similarly situated white employees were not similarly instructed; Plaintiff was directed by Orend not to have anything other than client sessions on her calendar. White employees were not similarly instructed.

14. There were a whole host of things Plaintiff was being told to do or not to do that her white co-workers told her were not consistent with what they were being told. Plaintiff continued to be given conflicting instructions or instructions which were arbitrarily changed on an ongoing basis. Plaintiff was being sabotaged and set up for failure by the Defendant's employees in supervisory capacities, including Lori Orend and Mary Beth Jordan.

15. Throughout this time and beyond, Mary Beth Jordan, the outpatient Director, kept a

sign on a filing cabinet inside her office which reads "Lady of the Manor." Jordan was regularly referred to by that term. Plaintiff was appalled and offended. "Lady of the Manor" to Plaintiff is a term she knew to have been used in slavery as referring to the wife of the plantation owner or master. Further, it is a term from feudal England to differentiate the owners or lords and ladies from the peons or peasants who were ruled by the lords. Either way, it described the hostile, discriminatory and toxic work environment that Plaintiff was experiencing.

16. By way of demonstration, a certified letter addressed to Plaintiff from a client had been opened without Plaintiff's knowledge.  Plaintiff did not receive this letter sent to her by a client,  until four days later. This letter opened with the client stating that he felt he was staring down the double barrel of a shotgun and other destructive suicidal thoughts. This letter which again had been opened and obviously read by someone had just been dropped in Plaintiff's mailbox four days after the letter was opened.  When it was determined who read the letter, no disciplinary action was taken against that person even though that breach implicated Plaintiff's professional license and placed her standing at risk.

17. There came a time around February 11, 2019, and again on March 18, 2019 that Plaintiff filed a Complaint with the Defendant's Affirmative Action Office regarding the toxic discriminatory Environment the Defendant was creating.

18. On or about March 21, 2019, Lori Orend, Plaintiff's immediate supervisor, physically assaulted the Plaintiff.  The Plaintiff called the police to the workplace. The incident

occurred when the Plaintiff printed out some papers at work regarding an Affirmative Action complaint that Plaintiff had filed against her supervisors. As Plaintiff walked into the printer room to get the copies, Plaintiff saw her immediate supervisor, Lori Orend, standing next to the printer. Lori had several papers in her hands that she was reading. Plaintiff could see her own name at the top of one of the pages. A verbal exchange occurred at that time between Lori Orend and Plaintiff. Plaintiff told Lori that the copies belonged to her, and Lori had no business reading them. Lori then thrust her elbow into Plaintiff's side causing observable bruising and contusion/s which Plaintiff's doctor confirmed. The police were called, and Plaintiff filed a hostile workplace report with the Defendant detailing the workplace violence Plaintiff had experienced. Defendant's treatment of Plaintiff created a hostile work environment for Plaintiff which was intolerable and humiliating. Because the Defendant who assaulted her, was never removed from the workplace, Plaintiff feared for her safety at work.

19. It wasn't until on or about April 9, 2019 almost four weeks later, that Plaintiff was finally transferred out of the Norwich SMHA office to the Vine Street office in Hartford.

20. On information and belief, Plaintiff's new supervisors were informed prior to her transfer, that Plaintiff had called the police on her supervisor for assaulting her in or around March of 2019, and that Plaintiff had filed an Affirmative Action complaint against her supervisors at DMHAS. Similarly situated Clinical Social Workers who had not called the police on their supervisors for assaulting them on the job, and had not filed Affirmative Action complaints against their supervisors, were not treated the way that Plaintiff was treated. When Plaintiff, the Victim in this matter, was transferred to the Defendant's

Hartford Office, the unequal treatment and retaliation continued at this location as well. Plaintiff was limited to answering the phones, and was not allowed to practice her profession as a Clinical Social Worker.. The supervisor in the Hartford office barely spoke to Plaintiff, however, she routinely conducted long personal conversations with other members of her team. Such exclusion by the Defendant, created an uncomfortable and hostile work environment. This hostile work environment caused Plaintiff to consider leaving her employment. As Plaintiff was a licensed clinical social worker with very particular skills and abilities that Plaintiff wants to be able to exercise and use beyond merely taking basic intake information on phone calls.  Plaintiff was being intentionally isolated, segregated, excluded, underutilized and not allowed to exercise the functions of her job.

21. Plaintiff avers that the Defendant has and is continuing to discriminate against Plaintiff and deny Plaintiff equal terms and conditions of employment and otherwise retaliate against Plaintiff because of her race and color, African American/Black, and her mental disability, Post Traumatic Stress Disorder (PTSD).

22. Plaintiff suffered adverse employment actions related to, in connection with and as a consequence of Defendant's illegal and discriminatory acts and commissions detailed herein, and creation of a hostile work environment..

23. Defendant treated Plaintiff differently than similarly situated employees who did not engage in protected activity, and did not subject other employees to the same or similar adversity and hostility in the workplace.

24. Defendants acts and omissions are without legitimate basis and any reason provided for Defendant's illegal and discriminatory actions are merely a pretext for the discriminatory and retaliatory way that Plaintiff was treated.  Plaintiff filed several complaints with the Defendant's Affirmative Action Office.

25. In or around May, 2019, Plaintiff requested that the Connecticut Commission on Human Rights and Opportunities investigate her complaint, secure for Plaintiff her rights as guaranteed to Plaintiff under the above cited laws and secure for Plaintiff any remedy to which Plaintiff may be entitled. (Exhibit 1-Affidavit of Illegal Discriminatory Practice).

26. On or about October 7, 2020 CHRO issued to the Plaintiff a release of Jurisdiction. (Exhibit 2-Release of Jurisdiction-CHRO Case No. 1940421/EEOC. Case No. 16-A-2019-01220).

D. **CAUSES OF ACTION**

1.      Plaintiff incorporates paragraphs 1-26 as if fully incorporated herein.

27.     In failing to provide equal employment opportunity, Defendant discriminated against the Plaintiff in the terms and conditions of her employment, in that, Defendant poorly evaluated Plaintiff, delegated Plaintiff unequal duties, delegated Plaintiff difficult assignments, harassed Plaintiff,, and inadequately trained Plaintiff on the basis of her race and color, in violation of 42 U.S.C. Sec.  2000e-2(a)(1).

28. By its ongoing and continuous illegal discrimination against the Plaintiff in the terms and conditions of her employment subsequent to the filings of her internal and CHRO Complaints, Defendant retaliated against Plaintiff for exercising her right to complain about the hostile work environment, in violation of 42 U.S.C. Sec. 2000e-3(a).

E.   **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays that this Honorable Court accept jurisdiction over this matter, convene a jury to determine all issues within its jurisdiction, award to Plaintiff compensatory and punitive damages as permitted by law, including back pay with interest and front pay, require Defendant to pay Plaintiff's reasonably-incurred litigation costs and attorney's fees and enter any other judgment or order which the interests of law or equity dictate.

Dated: December 18, 2020
Respectfully submitted,


_____/S/_____
Cynthia R. Jennings, Esq.
Federal Bar No. Ct 21797

Law Office of Cynthia R. Jennings
340 Broad Street, Suite 300
Windsor, Connecticut 06095
860.883.6947
attorneyjennings@gmail.com

Counsel for Plaintiff